1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

CWA LOCAL 1180 MEMBERS' ANNUITY
FUND AND CWA LOCAL 1180
ADMINISTRATIVE BENEFITS FUND,
INDIVIDUALLY AND ON BEHALF OF ALL
OTHERS SIMILARLY SITUATED,

                Plaintiffs,

v.

AMAZON.COM, INC., ANDREW R. JASSY,
JEFFREY P. BEZOS, BRIAN T. OLSAVSKY,
DAVID A. ZAPOLSKY, and NATE SUTTON,

                Defendants.

NO.

**CLASS ACTION COMPLAINT**

**<u>JURY TRIAL DEMANDED</u>**

       Plaintiffs CWA Local 1180 Members' Annuity Fund and CWA Local 1180 Administrative Benefits Fund (collectively "CWA 1180 Funds" or "Plaintiffs"), individually and on behalf of all others similarly situated, allege the following upon information and belief except as to allegations specific to Plaintiffs, which are alleged upon personal knowledge. Allegations based on information and belief are based on, *inter alia*, the investigation of counsel which, in turn, is based on the analysis and review of, among other things, public statements and filings with the United States Securities Exchange Commission ("SEC") made by Amazon.com, Inc.

CLASS ACTION COMPLAINT - 1

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

("Amazon"), news releases issued by Amazon, news articles and analyst reports regarding Amazon, and other publicly available information.

## I.      NATURE AND SUMMARY OF THE ACTION

1.      This is a class action on behalf of persons and entities that acquired Amazon common stock between February 1, 2019 and April 28, 2022, inclusive (the "Class Period"), against the Defendants Amazon; Founder, Current Executive Chair, and Former Chief Executive Officer Jeffrey P. Bezos ("Bezos"); Current Chief Executive Officer Andrew R. Jassy ("Jassy"); Chief Financial Officer Brian T. Olsavsky ("Olsavsky"); General Counsel David A. Zapolsky ("Zapolsky"); and Associate General Counsel Nate Sutton ("Sutton") (collectively, "Defendants"), for Defendants' violations of sections 10(b) and 20(a) of the Securities Exchange Act of 1934, (the "Exchange Act"), 15 U.S.C. §§ 78j(b) and 78t(a), and Rule 10b-5 promulgated by the SEC, 17 C.F.R. § 240.10b-5.

2.      Amazon, headquartered in Seattle, Washington and incorporated in Delaware, is one of the largest technology companies, and is involved in online retail, cloud computing, data, and streaming, among other services.

3.      While Amazon is most known for being an online retailer, Amazon actually is a "big data" company. On Amazon.com, Amazon acts as a merchant and retailer for third-party merchandise and its own line of Amazon-branded products, while collecting data the entire time.

4.      As the owner and operator of Amazon.com, Amazon collects and analyzes the data of its sales, customers, spending habits, and seller information.

5.      As Amazon collects data, it learns which items are best sellers, and how to outcompete its own third-party sellers.

CLASS ACTION COMPLAINT - 2

6.      Once Amazon has collected the data of the best-selling third-party merchandise, it replicates the merchandise, brands it as its own private-label "Amazon Basic", and advertises it at the top of its customer's searches.

7.      In June 2019, the U.S. House Committee on the Judiciary (the "House Judiciary Committee") initiated a bipartisan investigation into the state of the competition online, investigating Amazon, Apple, Facebook, and Google.[1]

8.      The House Judiciary Committee held eight hearings, and received testimony from Amazon's employees and counsel, including Amazon's then-Chief Executive Officer, Jeff Bezos.

9.      The House Judiciary Committee concluded that Amazon, as well as the other investigated companies, "run the marketplace while also competing in it – a position that enables them to write one set of rules for others, while they play by another, or to engage in a form of their own private *quasi* regulation that is unaccountable to anyone but themselves."

10.     The House Judiciary Committee concluded that Amazon made false and misleading statements to the Committee, then refused to turn over evidence that would either "corroborate its claims or correct the record."

11.     On March 9, 2022, the House Judiciary Committee requested that the U.S. Department of Justice ("DOJ") open a criminal investigation into Amazon and its executives for criminal obstruction of Congress in violation of applicable federal law.

12.     In response, Amazon asserted that there was "no factual basis" for the House Judiciary Committee's allegations.

---

[1] https://judiciary.house.gov/uploadedfiles/competition_in_digital_markets.pdf?utm_campaign=4493-519, last visited, June 26, 2022.

CLASS ACTION COMPLAINT - 3

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

13.     On April 6, 2022, news outlets reported that Amazon was under investigation by the Securities and Exchange Commission ("SEC") regarding its use of third-party seller data for its own private-label business.

14.     On this news, Amazon's stock fell 2% from $161.65 at open to $158.76 on close on April 6, 2022.[2]

15.     Beyond Amazon's anticompetitive misuse of third-party seller data, throughout much of 2020 and the remainder of the Class Period, Amazon was engaged in a spending spree on warehouse and fulfillment space. At the end of 2019, Amazon's distribution, warehouse and data center space covered approximately 192 million square feet. Beginning in 2020, the Company engaged in a massive expansion spree, expanding its data and fulfillment centers until they covered approximately 387.1 million square feet by the end of 2021, doubling its size in two years and resulting in an excess of space and employees that forced the Company to pivot into "cost efficiency'"" mode.

16.     On April 28, 2022, Amazon posted its first quarterly loss in seven years. The loss reflected, in part, $2 billion in "incremental costs" arising from the Company's doubling of its warehouse, fulfillment, and data center space, from 192 million square feet in December 2019 to approximately 387.1 million square feet at the end of 2021. This over-expansion forced the Company to pivot into "cost efficiency" mode, halting further expansion and even cancelling some planned expansion projects.

---

[2] On June 3, 2022, Amazon completed a 20 for 1 Stock Split. Accordingly, all numbers reflect valuations and stock prices based on that 20 for 1 split.

CLASS ACTION COMPLAINT - 4

17.     On this news, Amazon's stock fell 14.05% from $144.59 per share, to $124.28 per share on close on April 29, 2022.

18.     Throughout the Class Period, Defendants made materially false and misleading statements regarding Amazon's business, operations, and policies. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) Amazon engaged in anticompetitive conduct; (ii) Amazon's anticompetitive behavior exposes it to a heightened risk of regulatory scrutiny; (iii) Amazon's revenues derived from its Amazon Basics business were a result of its anticompetitive conduct; and (iv) Amazon was engaged in an overly aggressive expansion of its warehouse and fulfillment network that would expose it to billions in unnecessary "incremental costs."

19.     Defendants' wrongful acts and omissions, and the substantial decline in the trading price of Amazon securities when those wrongful acts and omissions became known to investors, caused significant losses and damages to Plaintiffs and the members of the Class.

## II.     JURISDICTION AND VENUE

20.     The claims asserted herein arise under Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

21.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act (15 U.S.C. § 78aa).

22.     Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)). Substantial acts in furtherance of the alleged fraud or the effects of the fraud have occurred in this Judicial District. Many of the acts charged herein, including the dissemination of materially false and/or misleading information,

CLASS ACTION COMPLAINT - 5

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington  98101
TEL. 206.682.5600 ● FAX 206.682.2992

occurred in substantial part in this Judicial District. In addition, the Company's principal executive offices are in the Judicial District.

23.     In connection with the acts, transactions, and conduct alleged herein, Defendants directly and indirectly used the means and instrumentalities of interstate commerce, including the United States mail, interstate telephone communications, and the facilities of a national securities exchange.

**III.     PARTIES**

24.     CWA 1180 Funds, as set forth in the accompanying certification, incorporated by reference herein, purchased Amazon securities during the Class Period, and suffered damages as a result of the federal securities law violations and false and/or misleading statements and/or material omissions alleged herein.

25.     Defendant Amazon is incorporated under the laws of Delaware and maintains its headquarters in Seattle, Washington. Amazon's common stock trades on the NASDAQ under the "AMZN" ticker symbol.

26.     Defendant, Jeffrey P. Bezos ("Bezos"), is the Founder and Executive Chair, was Chief Executive Officer until July 2021, and has been a director of the Company at all relevant times.

27.     Defendant Andrew R. Jassy ("Jassy"), has been the Chief Executive Officer since July 2021 of the Company.

28.     Defendant Brian T. Olsavsky ("Olsavsky"), was the Company's Chief Financial Officer ("CFO") at all relevant times.

29.     Defendant David A. Zapolsky ("Zapolsky"), was the Companies' General Counsel at all relevant times.

CLASS ACTION COMPLAINT - 6

30. Defendant Nate Sutton ("Sutton"), was the Companies' Associate General Counsel at all relevant times.

31. Defendants Bezos, Jassy, Olsavsky, Zapolsky, and Sutton (collectively the "Individual Defendants"), because of their positions with the Company, possessed the power and authority to control the contents of Amazon's reports filed with the SEC, testimony before Congress, press releases, and presentations to securities analysts, money and portfolio managers, and institutional investors, *i.e.*, the market. The Individual Defendants were provided with copies of the Company's reports and press releases alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected. Because of their positions and access to material non-public information, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to, and were being concealed from, the public, and that the positive representations which were being made were then materially false and/or misleading. The Individual Defendants are liable for the false statements pled herein.

## IV.    FACTUAL ALLEGATIONS

32. Amazon, headquartered in Seattle, Washington and incorporated in Delaware, is one of the largest technology companies, and is involved in online retail, cloud computing, data, and streaming, among other services.

33. While Amazon is most known for being an online retailer, Amazon actually is a "big data" company. On Amazon.com, Amazon acts as a merchant and retailer for third-party merchandise and its own line of Amazon-branded products, while collecting data the entire time.

34. As the owner and operator of Amazon.com, Amazon collects and analyzes the data of its sales, customers, spending habits, and seller information.

CLASS ACTION COMPLAINT - 7

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

35.     As Amazon collects data, it learns which items are best sellers, and how to outcompete its own third-party sellers.

36.     In the Amazon 2018 Annual Report to its employees, Amazon "put it bluntly: Third-party sellers are kicking our first party butt. Badly."

37.     Once Amazon has collected the data of the best-selling third-party merchandise, it replicates the merchandise, brands it as its own private-label "Amazon Basic," and advertises it at the top of its customer's searches.

38.     The Class Period begins on February 1, 2019, when Amazon filed an Annual Report on Form 10-K with the SEC, reporting its financial and operating results for the year ending on December 31, 2018.[3]

39.     In the 2018 10-K, Amazon failed to disclose that it had begun engaging in illegal anticompetitive conduct in an effort to capture profit that was being realized by its third-party sellers. Instead, the report contained a generic boilerplate disclaimer advising investors that Amazon was "subject to general business regulations and laws, as well as regulations and laws specifically governing the Internet [and] e-commerce" and that these laws covered competition among other things. Amazon failed to disclose the specific and known risks arising from its illegal business practices.

40.     In the 2018 10-K, Amazon reported net sales of $232.89 billion for the year. Amazon failed to disclose that these sales figures were unsustainable as they were derived from impermissible anticompetitive conduct.

---

[3] https://d18rn0p25nwr6d.cloudfront.net/CIK-0001018724/bed19367-fa6b-41ff-a973-df19510b0bba.pdf, last visited, June 26, 2022.

CLASS ACTION COMPLAINT - 8

41.     Appended to the 2018 10-K as Exhibits were signed Certifications pursuant to the Sarbanes-Oxley Act ("SOX") by Defendants Bezos and Olsavsky, attesting that the documents fully complied with the requirements of Section 13(a) or 15(d) of the Securities Exchange Act of 1934, and that the information contained fairly presents, in all material respects, the financial condition and results of operations of the Company.

42.     On April 11, 2019, Defendant Bezos penned a letter to Amazon's shareholders, where he wrote "To put it bluntly: Third-party sellers are kicking our first party butt. Badly" . . . "The compound annual growth rate for our first-party business in that time period is 25%. But in that same time, third-party sales have grown from $0.1 billion to $160 billion – a compound annual growth rate of 52%."[4]

43.     On April 25, 2019, Amazon hosted an earnings call with investors and analysts to discuss its Q1 2019 Results and its financial outlook. During that conference call, Defendant Olsavsky asserted that Amazon's goal was to:

> . . . allow customers to have the broadest selection, the best available price and also the most convenient options on how they receive the item. If we're delivering on those three elements, we're indifferent as to whether its sold by us or a third party. We actively recruit sellers to sell on our platform [ ] because it adds selection . . . we have a vested interest in the success of our sellers.

44.     On June 3, 2019, the U.S. House Committee on the Judiciary (the "House Judiciary Committee") initiated a bipartisan investigation into the state of the competition online, investigating Amazon, Apple, Facebook, and Google.

---

[4] https://www.aboutamazon.com/news/company-news/2018-letter-to-shareholders, last visited, June 26, 2022.

CLASS ACTION COMPLAINT - 9

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington  98101
TEL. 206.682.5600 ● FAX 206.682.2992

45.     The House Judiciary Committee held eight hearings, and received testimony from Amazon's employees and counsel, including Amazon's then-Chief Executive Officer, Jeff Bezos.

46.     On July 16, 2019, Defendant Sutton testified before the House Judiciary committee, and stated that "data on popularity of products like much retail data is actually public data," but "[Amazon] does not use any of that specific seller data in creating our own private brand products."

47.     When asked whether Amazon collected data to push its own private label products over third-party seller products, Defendant Sutton responded:

> [o]ur algorithims, such as the buy box, is aimed to predict what customers want to buy . . . and we apply the same criteria whether you're a third party seller or Amazon to that because we want customers to make the right purchase regardless of whether it's a seller or Amazon.

48.     Two days after Defendant Sutton's sworn testimony before the House Committee, on July 18, 2019, *The Capital Forum* quoted a former Amazon employee who contradicted aspects of Defendant Sutton's testimony:

> Contrary to Mr. Sutton's representation that Amazon did not use "any" third-party seller data to compete with those sellers, the former employee said that Amazon "routinely tracked the popularity of independent sellers' products sold through its website." "I used to pull sellers' data to look at what the best products were when I was there," said the former employee, who worked in product management. "That was my job."

49.     Amazon did not volunteer any clarifying explanation to the Committee. Instead, five days after the *Capitol Forum* article, on July 23, 2019, Subcommittee Chairman Cicilline sent a letter to Defendant Zapolsky, citing the article and noting that Defendant Sutton's testimony "ha[d] been contested by a former Amazon employee, raising questions about the veracity of his responses under oath."

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

50.     The same letter also noted that Defendant Sutton had been evasive when responding to the Committee's questions.

51.     On July 25, 2019, Amazon hosted an earnings call with investors and analysts to discuss its Q2 2019 Results and financial outlook. On that call, Defendant Olsavsky stated,

> we're indifferent on whether we're focused on price convenience and selection for our customers. And whether product is a retail offering or third-party offering is not that important to us. As long as it's in stock, as long as it's priced competitively. We continue very heavily in our systems both for retail vendors and also for third-party merchants invest[ing] billions of dollars a year on behalf of them making Amazon a better place for customers to buy and increasingly not only vendor sales, but also third-party merchant sales.

52.     On July 26, 2019, Defendant Zapolsky responded in a letter on behalf of Amazon, and conceded that contrary to Defendant Sutton's testimony, Amazon did in fact use aggregated store data and customer shopping behavior as inputs to Amazon's private label strategy.[5] Defendant Zapolsky also alleged that per Amazon's private label strategy, Amazon prohibited the use of data related to individual sellers. Defendant Zapolsky provided no further explanation of the substance of Amazon's policy on third-party seller data.

53.     On October 24, 2019, Amazon hosted an earnings call with investors and analysts to discuss its Q3 2019 Results and financial outlook. On that call, Defendant Olsavsky reiterated his response from the Q2 2019 Earnings Call, stating that:

> . . . we only succeed if the third party sellers succeeds [sic]. So we're heavily invested in them as they are in us. So we are constantly investing on their behalf, adding new products and features and you know we are cognizant of their economics as well and we want a business that works for both of us and we set our fees accordingly.

---

[5] https://judiciary.house.gov/sites/democrats.judiciary.house.gov/files/documents/07.26.19%20-%20amazon%20response.pdf, last visited on June 26, 2022.

CLASS ACTION COMPLAINT - 11

1       54.     On January 31, 2020, Amazon filed its Annual Report on Form 10-K with the

2  SEC, reporting the Company's financial and operating results for the year ending December 31,

3  2019. Similar to its 2018 10-K, Amazon included boilerplate language that it was subject to

4  general business regulations and laws, and failed to disclose the specific and known risks arising

5  from its anticompetitive business practices.[6]

6       55.     In the 2019 10-K, Amazon reported net sales of \$280.52 billion for the year.

7  Amazon failed to disclose that these sales figures were unsustainable as they were derived from

8  impermissible anticompetitive conduct.

9       56.     Appended to the 2019 10-K as Exhibits were signed Certifications pursuant to

10  SOX by Defendants Bezos and Olsavsky, attesting that the documents fully complied with the

11  requirements of Section 13(a) or 15(d) of the Securities Exchange Act of 1934, and that the

12  information contained fairly presents, in all material respects, the financial condition and results

13  of operations of the Company.

14      57.     On April 23, 2020, the *Wall Street Journal*, among other media outlets, reported

15  that Amazon employees were in the regular business of using sensitive business information from

16  third-party sellers to develop competing products.[7]

---

[6] https://d18rn0p25nwr6d.cloudfront.net/CIK-0001018724/4d39f579-19d8-4119-b087-ee618abf82d6.pdf, last visited on June 26, 2022.

[7] https://www.wsj.com/articles/amazon-scooped-up-data-from-its-own-sellers-to-launch-competing-products-11587650015, last visited on June 26, 2022.

CLASS ACTION COMPLAINT - 12

58.     On May 1, 2020, the House Judiciary Committee sent a letter to Defendant Bezos, encouraging Defendant Bezos to testify before the Subcommittee whether Amazon was exploiting its role as the largest online marketplace in the United States.[8]

59.     In response, on May 15, 2020, Amazon sent a letter on behalf of Defendant Bezos stating that it had an internal policy known as the "Seller Data Protection Policy" prohibiting the use of nonpublic, seller-specific data to compete against Amazon's selling partners. That letter stated that Amazon trains extensively on that policy, that leadership reinforces said training, that Amazon audits for compliance, and that Amazon examines allegations of breaches of said policy.[9]

60.     Additionally, in that letter, Amazon stated that Amazon prohibits the use of data related to individual sellers in its private label strategy, that Amazon is prohibited from using individual sellers' data to decide which products to launch, and that Amazon is prohibited from using such data to make sourcing, pricing, or inventory decisions for its private brand products.

61.     On July 29, 2020, Defendant Bezos testified before the House Committee. Defendant Bezos could not affirmatively answer or deny whether Amazon's internal policy had never been violated.[10]

62.     On July 30, 2020, Amazon held a conference call discussing financial results for the second quarter of 2020. During the call, Amazon discussed an aggressive plan to expand

---

[8] https://judiciary.house.gov/uploadedfiles/2020-05-01_letter_to_amazon_ceo_bezos.pdf?utm_campaign=2719-519, last visited on June 26, 2022.

[9] https://judiciary.house.gov/uploadedfiles/letter_from_brian_huseman_to_committee__may_15_2020.pdf, last visited on June 26, 2022.

[10] https://www.govinfo.gov/content/pkg/CHRG-116hhrg41317/pdf/CHRG-116hhrg41317.pdf, last visited on June 26, 2022.

CLASS ACTION COMPLAINT - 13

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

warehouse and fulfillment space, reflecting an approximately 50% growth in space over the course of the year and, consequently, dramatically increasing headcount to support fulfillment.

63.     SEC Regulation S-K17 C.F.R. § 229.303 was adopted with the goal of "provid[ing] information relevant to an assessment of the financial condition and results of operations of the registrant including an evaluation of the amounts and certainties of cash flows . . . . The discussion and analysis must focus specifically on material events and uncertainties known to management that are reasonably likely to cause reported financial information not to be necessarily indicative of future operating results or of future financial condition. This includes descriptions and amounts of matters that have had a material impact on reported operations, as well as matters that are reasonably likely based on management's assessment to have a material impact on future operations. Amazon failed to provide adequate information to investors regarding its hyper- aggressive capacity expansion and the relative demand that the Company was seeing from consumers. As a result, investors suffered substantial losses when Amazon belatedly acknowledged that it had overbuilt capacity to such an extent that it was incurring several billion dollars in costs associated with over-expansion and that it was pivoting to engaging in cost control measures.

64.     On September 4, 2020, Amazon responded to the House Committee's July 29, 2020 hearing requests, and stated that Amazon first learned of alleged violations of Amazon's Seller Data Protection Policy from the *Wall Street Journal* article. Amazon further said that the reporting conflated product-pricing and top-seller data, with individual seller data.[11]

---

[11] https://docs.house.gov/meetings/JU/JU05/20200729/110883/HHRG-116-JU05-20200729-QFR052.pdf, last visited on June 26, 2022.

CLASS ACTION COMPLAINT - 14

65.     On October 4, 2020, Amazon supplemented its previous responses and stated that it had completed its internal investigation regarding the *Wall Street Journal* allegations. Amazon further stated that it prohibits private brand employees to look at individual seller data, but does permit them to view aggregate sales data. Amazon clarified that individual seller data is information regarding sales made by a single seller, and that aggregate store data is data on the number of sales of a product where there is more than one seller of that product.[12]

66.     On February 2, 2021, after the close of the market, Amazon held a conference call to discuss fourth quarter financial results. During the call, the Company noted that "we have a lot of continued expansion . . . definitely through 2021," even while noting that it "you may have to overbuild to protect the customer experience."

67.     On February 3, 2021, Amazon filed an Annual Report on Form 10-K with the SEC, reporting its financial and operating results for the year ending December 31, 2020. Similar to its 2018 and 2019 10-K forms, Amazon included boilerplate language that it was subject to general business regulations and laws, and failed to disclose the specific and known risks arising from its anticompetitive business practices.[13]

68.     In the 2020 10-K, Amazon reported net sales of $386.06 billion for the year. Amazon failed to disclose that these sales figures were unsustainable as they were derived from impermissible anticompetitive conduct.

69.     Appended to the 2020 10-K as Exhibits were signed Certifications pursuant to SOX by Defendants Bezos and Olsavsky, attesting that the documents fully complied with the

---

[12] https://judiciary.house.gov/uploadedfiles/letter_from_brian_huseman_to_committee__oct_04_2020.pdf, last visited on June 26, 2022.

[13] https://d18rn0p25nwr6d.cloudfront.net/CIK-0001018724/336d8745-ea82-40a5-9acc-1a89df23d0f3.pdf, last visited on June 26, 2022.

CLASS ACTION COMPLAINT - 15

1    requirements of Section 13(a) or 15(d) of the Securities Exchange Act of 1934, and that the

2    information contained fairly presents, in all material respects, the financial condition and results

3    of operations of the Company.

4         70.    On April 29, 2021, during a conference call discussing first quarter 2021 financial

5    results, Amazon CFO Olsavsky noted that Amazon's increased spending on warehouse and

6    fulfillment resources would continue to be "a large investment" through 2021 and "may also spill

7    into 2022. That should set us up in really good stead with our capacity." The Company assured

8    investors that "we measure that [costs] very closely."

9         71.    During Amazon's July 29, 2021 earnings conference call, the Company reasoned

10   that prior "pull-forward in demand" was driving the continued need for "a significant amount of

11   investment in our fulfillment network." Amazon defended this spending even as at least one

12   analyst questioned it in light of increasing fulfillment costs.

13        72.    On October 18, 2021, the House Judiciary Committee sent Amazon a letter,

14   explaining that it was providing Amazon with a final opportunity to provide exculpatory evidence

15   to corroborate the prior testimony and statements on behalf of Amazon, as "recent, credible

16   reporting directly contradicted the sworn testimony and representations of Amazon's top

17   executives" – including the testimony of Defendant Bezos.[14]

18        73.    In discussing third quarter 2021 results on October 28, 2021, Amazon

19   acknowledged that "storage space" and "fulfillment capacity" was not Amazon's "primary

20   capacity constraint," but assured investors that there was no need to cut spending on fulfillment

21

22

23   _____
     [14] https://judiciary.house.gov/uploadedfiles/letter_-_amazon_misrepresentations_-_10.18.21.pdf, last
     visited on June 26, 2022.

CLASS ACTION COMPLAINT - 16

1  and warehouse spending, indeed, the Company announced that "we are on track to double our

2  fulfillment network over the 2-year period since the pandemic's early days."

3  74.    On November 1, 2021, Amazon responded to the Committee's letter by

4  summarizing the testimony of Defendant Bezos as well as Amazon's past responses.[15]

5  75.    On February 3, 2022, Amazon hosted an earnings call with investors and analysts

6  to discuss its Q4 2021 results and financial outlook. On that call, Defendant Olsavsky repeated

7  that Amazon continues to invest in making third-party sellers successful. The Company also

8  reassured investors again regarding its spending on warehouses and fulfillment, noting that "we

9  feel good about those investments," even as analysts questioned the continued spending.

10  76.    On February 4, 2022, Amazon filed an Annual Report on Form 10-K with the

11  SEC, reporting its financial and operating results for the year ending December 31, 2021. Similar

12  to its 2018, 2019, and 2020 10-K forms, Amazon included boilerplate language that it was subject

13  to general business regulations and laws, and failed to disclose the specific and known risks

14  arising from its anticompetitive business practices.

15  77.    Appended to the 2021 10-K as Exhibits were signed Certifications pursuant to

16  SOX by Defendants Jassy and Olsavsky, attesting that the documents fully complied with the

17  requirements of Section 13(a) or 15(d) of the Securities Exchange Act of 1934, and that the

18  information contained fairly presents, in all material respects, the financial condition and results

19  of operations of the Company.

20  78.    The statements identified in ¶¶6-77 above were materially false and/or misleading

21  because they misrepresented and failed to disclose the following adverse facts pertaining to the

22

23  [15] https://judiciary.house.gov/uploadedfiles/letter_from_brian_huseman_to_committee__nov_01_
2021.pdf, last visited on June 26, 2022.

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

Company's business, operations, and compliance policies, which were known to Defendants or recklessly disregarded by them. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) Amazon engaged in anticompetitive conduct; (ii) Amazon's anticompetitive behavior exposes it to a heightened risk of regulatory scrutiny; (iii) Amazon's revenues derived from its Amazon Basics business were a result of its anticompetitive conduct; (iv) Amazon was engaged in an overly aggressive expansion of its warehouse and fulfillment network that would expose it to billions in unnecessary "incremental costs" which would ultimately and adversely impact its financial results; and (v) Amazon's expansion exceeded demand, which, in turn, greatly and adversely impacted its profitability while materially increasing its costs.

79.    On March 9, 2022, the House Judiciary Committee requested that the U.S. Department of Justice ("DOJ") open a criminal investigation into Amazon and its executives for criminal obstruction of Congress in violation of applicable federal law.[16]

80.    The House Judiciary Committee stated that Amazon, among other companies, "run the marketplace while also competing in it – a position that enables them to write one set of rules for others, while they play by another, or to engage in a form of their own private *quasi* regulation that is unaccountable to anyone but themselves."

81.    The House Judiciary Committee concluded that Amazon made false and misleading statements to the Committee, then refused to turn over evidence that would either "corroborate its claims or correct the record."

---

[16] https://judiciary.house.gov/uploadedfiles/hjc_referral_--_amazon.pdf, last visited on June 30, 2022.

CLASS ACTION COMPLAINT - 18

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 ● FAX 206.682.2992

82.     On the same day, and other media outlets reported that Amazon and the individual Defendants had repeatedly made misrepresentations regarding the Seller Data Protection Policy, and Amazon's compliance with said policy.

83.     On April 6, 2022, the *Wall Street Journal* among other news outlets reported that Amazon was under investigation by the Securities and Exchange Commission ("SEC") regarding its use of third-party seller data for its own private-label business.[17]

84.     On this news, Amazon's stock fell 2% from $161.65 at open to $158.76 on close on April 6, 2022.

85.     On April 28, 2022, Amazon issued results for the first quarter of 2022, posting a net loss of $3.8 billion and announcing earnings per share of -$7.56, missing analyst estimates by $15.78. The Company also provided lower than expected guidance for the second quarter of 2022.  In announcing a significant miss in its first quarter 2022 financials, Amazon pivoted, announcing that it was "***working to reduce***" costs "***within our control***" including costs in "the labor force and fulfillment network." The Company acknowledged that the need to reduce these costs came with a belated acknowledgment that Amazon had overbuilt its fulfillment infrastructure. "[W]e currently have ***excess capacity in our fulfillment and transportation*** network. Capacity decisions are made years in advance, and ***we made conscious decisions in 2020 and early 2021*** to not let space be a constraint on our business."

86.     On the news, the trading price of Amazon stock fell from a prior close of $144.60 to close at $124.28 on April 29, 2022, a decline of $20.32 per share, or 14%, erasing approximately $10.34 billion of the company's market capitalization.

---

[17] https://www.wsj.com/articles/sec-is-investigating-how-amazon-disclosed-business-practices-11649271819, last visited on June 30, 2022.

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

87.     On June 6, 2022, Amazon announced the departure of Dave Clark, the CEO of Amazon's worldwide consumer division, who had spearheaded the Company's massive expansion of its fulfillment and warehouse space. The departure, which was attributed to Clark's decision to "pursue other opportunities," came just six weeks after Amazon's disclosures of April 28, 2022.

88.     On June 16, 2022, the Wall Street Journal published an article titled "Amazon CEO Andy Jassy's First Year on the Job: Undoing Bezos-Led Overexpansion." The article noted the efforts to "cut back the excesses of an e-commerce operation the company expanded at a breakneck pace" "amid one of the worst stretches for financial performance in Amazon's history." The result, as reported in the Wall Street Journal article, was an excess of space that "would contribute $10 million in extra costs in the first half of 2022.

## V.     CLASS ACTION ALLEGATIONS

89.     Plaintiffs bring this action as a class action pursuant to Rule 23, *et seq.* of the Federal Rules of Civil Procedure on behalf of the Class. Excluded from the Class are Defendants, directors, and officers of the Company, and their families and affiliates.

90.     The members of the Class are so numerous that joinder of all members is impracticable. The disposition of their claims in a class action will provide substantial benefits to the parties and the Court. As of April 28, 2022, Amazon had 508,720,481 shares of common stock outstanding, owned by thousands of persons. Following its June 3, 2022 stock split, Amazon has 10,174,409,620 shares outstanding, owned by thousands of persons.

91.     There is a well-defined community of interest in the questions of law and fact involved in this case. Questions of law and fact common to the members of the Class that predominate over questions that may affect individual Class members include:

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

a.      whether Defendants violated the Exchange Act;

b.      whether Defendants omitted and/or misrepresented material facts;

c.      whether Defendants' statements omitted material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading;

d.      whether Defendants knew or recklessly disregarded that their statements were false and misleading;

e.      whether the prices of Amazon common stock were artificially inflated; and

f.      the extent of damage sustained by Class members and the appropriate measure of damages.

92.      Plaintiffs' claims are typical of those of the Class because Plaintiffs and the Class sustained damages from Defendants' wrongful conduct.

93.      Plaintiffs will adequately protect the interests of the Class and have retained counsel who are experienced in class action securities litigation. Plaintiffs have no interests that conflict with those of the Class.

94.      A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation makes it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

## VI.      LOSS CAUSATION

95.      Defendants' wrongful conduct, as alleged herein, directly and proximately caused the economic loss suffered by Plaintiffs and the Class.

CLASS ACTION COMPLAINT - 21

96.     During the Class Period, Plaintiffs and the Class purchased Amazon securities at artificially inflated prices and were damaged thereby. The price of the Company's securities declined significantly when the misrepresentations made to the market, and/or the information alleged herein to have been concealed from the market, and/or the effects thereof, were revealed, causing investors' losses.

97.     The market for Amazon securities was open, well-developed and efficient at all relevant times. As a result of these materially false and/or misleading statements, and/or failures to disclose, Amazon securities traded at artificially inflated prices during the Class Period. Plaintiffs and other members of the Class purchased or otherwise acquired Amazon's securities relying upon the integrity of the market price of the Company's securities and market information relating to Amazon, and have been damaged thereby.

98.     During the Class Period, Defendants materially misled the investing public, thereby inflating the price of Amazon securities, by publicly issuing false and/or misleading statements and/or omitting to disclose material facts necessary to make Defendants' statements, as set forth herein, not false and/or misleading. The statements and omissions were materially false and/or misleading because they failed to disclose material adverse information and/or misrepresented the truth about Amazon's business, operations, and prospects as alleged herein.

99.     At all relevant times, the material misrepresentations and omissions particularized in this Complaint directly or proximately caused or were a substantial contributing cause of the damages sustained by Plaintiffs and other members of the Class. As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about Amazon's financial well-being. These material misstatements and/or omissions had the cause and effect of creating in the market an unrealistically positive

CLASS ACTION COMPLAINT - 22

assessment of the Company and its financial well-being, thus causing the Company's securities to be overvalued and artificially inflated at all relevant times. Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiffs and other members of the Class purchasing the Company's securities at artificially inflated prices, thus causing the damages complained of herein when the truth was revealed.

## VII.   APPLICABILITY OF PRESUMPTION OF RELIANCE (FRAUD-ON-THE-MARKET DOCTRINE)

100.   The market for Amazon securities was open, well-developed and efficient at all relevant times. As a result of the materially false and/or misleading statements and/or failures to disclose, Amazon securities traded at artificially inflated prices during the Class Period. Plaintiffs and other members of the Class purchased or otherwise acquired the Company's securities relying upon the integrity of the market price of Amazon securities and market information relating to Amazon, and have been damaged thereby.

101.   During the Class Period, the artificial inflation of Amazon stock was caused by the material misrepresentations and/or omissions particularized in this Complaint causing the damages sustained by Plaintiffs and other members of the Class. As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about Amazon's business, operations, and results. These material misstatements and/or omissions created an unrealistically positive assessment of Amazon and its business, operations, and results, thus causing the price of the Company's securities to be artificially inflated at all relevant times, and when disclosed, negatively affected the value of the Company stock. Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiffs and other members of the Class purchasing the Company's securities at such artificially inflated prices, and each of them has been damaged as a result.

CLASS ACTION COMPLAINT - 23

102.    At all relevant times, the market for Amazon securities was an efficient market for the following reasons, among others:

a.    Amazon was listed and actively traded on the NASDAQ, a highly efficient and automated market;

b.    As a regulated issuer, Amazon filed periodic public reports with the SEC and/or the NASDAQ;

c.    Amazon regularly communicated with public investors via established market communication mechanisms, including through regular dissemination of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and/or

d.    Amazon was followed by securities analysts employed by brokerage firms who wrote reports about the Company, and these reports were distributed to the sales force and certain customers of their respective brokerage firms. Each of these reports was publicly available and entered the public marketplace.

103.    As a result of the foregoing, the market for Amazon's securities promptly digested current information regarding Amazon from all publicly available sources and reflected such information in Amazon's stock price. Under these circumstances, all purchasers of Amazon's securities during the Class Period suffered similar injury through their purchase of Amazon's securities at artificially inflated prices and a presumption of reliance applies.

104.    A Class-wide presumption of reliance is also appropriate in this action under the Supreme Court's holding in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972), because the Class's claims are, in large part, grounded on Defendants' material misstatements and/or omissions. Because this action involves Defendants' failure to disclose material adverse

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

1    information regarding the Company's business operations and financial prospects—information

2    that Defendants were obligated to disclose—positive proof of reliance is not a prerequisite to

3    recovery. All that is necessary is that the facts withheld be material in the sense that a reasonable

4    investor might have considered them important in making investment decisions. Given the

5    importance of the Class Period material misstatements and omissions set forth above, that

6    requirement is satisfied here.

7    **VIII.   NO SAFE HARBOR**

8          105.   The statutory safe harbor provided for forward-looking statements under certain

9    circumstances does not apply to any of the allegedly false statements pleaded in this Complaint.

10   The statements alleged to be false and misleading herein all relate to then-existing facts and

11   conditions. In addition, to the extent certain of the statements alleged to be false may be

12   characterized as forward looking, they were not identified as "forward-looking statements" when

13   made and there were no meaningful cautionary statements identifying important factors that

14   could cause actual results to differ materially from those in the purportedly forward-looking

15   statements. In the alternative, to the extent that the statutory safe harbor is determined to apply

16   to any forward-looking statements pleaded herein, Defendants are liable for those false forward-

17   looking statements because at the time each of those forward-looking statements was made, the

18   speaker had actual knowledge that the forward-looking statement was materially false or

19   misleading, and/or the forward-looking statement was authorized or approved by an executive

20   officer of Amazon who knew that the statement was false when made.

21

22

23

CLASS ACTION COMPLAINT - 25

**COUNT I**

**VIOLATION OF SECTION 10(b) OF THE EXCHANGE ACT AND RULE 10b-5
PROMULGATED THEREUNDER AGAINST ALL DEFENDANTS**

106.    Plaintiffs incorporate by reference and reallege each and every allegation set forth above, as though fully set forth herein.

107.    During the Class Period, Defendants carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (1) deceive the investing public, including Plaintiffs and other Class members, as alleged herein; and (2) cause Plaintiffs and other members of the Class to purchase Amazon securities at artificially inflated prices. In furtherance of this unlawful scheme, plan and course of conduct, each of the Defendants took the actions set forth herein.

108.    Defendants: (a) employed devices, schemes, and artifices to defraud; (b) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (c) engaged in acts, practices, and a course of business that operated as a fraud and deceit upon the purchasers of the Company's common stock in an effort to maintain artificially high market prices for Amazon common stock in violation of Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder. All Defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

109.    Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about the business, operations and future prospects of Amazon as specified herein.

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

110.    These Defendants employed devices, schemes, and artifices to defraud while in possession of material adverse non-public information, and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of Amazon's value, which included the making of, or participation in the making of, untrue statements of material facts and omitting to state material facts necessary in order to make the statements made about Amazon and its business operations in the light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business that operated as a fraud and deceit upon the purchasers of Amazon's common stock during the Class Period.

111.    Individual Defendants' primary liability, and controlling person liability, arises from the following facts: (1) Individual Defendants were high-level executives, directors, and/or agents at the Company during the Class Period and members of the Company's management team or had control thereof; (2) each Individual Defendant, by virtue of his responsibilities and activities as a senior officer and/or director of the Company, was privy to and participated in the creation, development and reporting of the Company's financial condition; (3) each Individual Defendant enjoyed significant personal contact and familiarity with the other Individual Defendant and was advised of and had access to other members of the Company's management team, internal reports and other data and information about the Company's finances, operations, and sales at all relevant times; and (4) each Individual Defendant was aware of the Company's dissemination of information to the investing public which they knew or recklessly disregarded was materially false and misleading.

112.    Defendants had actual knowledge of the misrepresentations and omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

ascertain and to disclose such facts, even though such facts were available to them. Such Defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing Amazon's operating condition and future business prospects from the investing public and supporting the artificially inflated price of its securities. As demonstrated by Defendants' overstatements and misstatements of the Company's financial condition throughout the Class Period, Defendants, if they did not have actual knowledge of the misrepresentations and omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

113.    As a result of the dissemination of the materially false and misleading information and failure to disclose material facts, as set forth above, the market price of Amazon's securities was artificially inflated during the Class Period.  In ignorance of the fact that market prices of Amazon's publicly-traded securities were artificially inflated, and relying directly or indirectly on the false and misleading statements made by Defendants, or upon the integrity of the market in which the common stock trades, and/or on the absence of material adverse information that was known to or recklessly disregarded by Defendants but not disclosed in public statements by Defendants during the Class Period, Plaintiffs and the other members of the Class acquired Amazon's common stock during the Class Period at artificially high prices and were or will be damaged thereby.

114.    At the time of said misrepresentations and omissions, Plaintiffs and other members of the Class were ignorant of their falsity, and believed them to be true. Had Plaintiffs and the other members of the Class and the marketplace known the truth regarding Amazon's financial results, which was not disclosed by Defendants, Plaintiffs and other members of the

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

Class would not have purchased or otherwise acquired their Amazon common stock, or, if they had acquired such securities during the Class Period, they would not have done so at the artificially inflated prices that they paid.

115. By virtue of the foregoing, Defendants have violated Section 10(b) of the Exchange Act, and Rule 10b-5 promulgated thereunder.

116. As a direct and proximate result of Defendants' wrongful conduct, Plaintiffs and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's common stock during the Class Period.

117. This action was filed within two years of discovery of the fraud and within five years of each Plaintiffs' purchases of securities giving rise to the cause of action.

**COUNT II**

**VIOLATION OF SECTION 20(a) OF THE EXCHANGE ACT
AGAINST THE INDIVIDUAL DEFENDANTS**

118. Plaintiffs incorporate by reference and reallege each and every allegation set forth above, as though fully set forth herein.

119. The Individual Defendants acted as controlling persons of Amazon within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their high-level positions, agency, ownership and contractual rights, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false financial statements filed by the Company with the SEC and disseminated to the investing public, the Individual Defendants had the power to influence and control, and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements that Plaintiffs contend are false and misleading. The Individual Defendants were provided with or had unlimited access to copies of the Company's reports, press releases, public

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

filings and other statements alleged by Plaintiffs to have been misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or to cause the statements to be corrected.

120.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

121.     As set forth above, Amazon and the Individual Defendants each violated Section 10(b), and Rule 10b-5 promulgated thereunder, by their acts and omissions as alleged in this Complaint.

122.     By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' wrongful conduct, Plaintiffs and other members of the Class suffered damages in connection with their purchases of the Company's common stock during the Class Period.

123.     This action was filed within two years of discovery of the fraud and within five years of each Plaintiffs' purchases of securities giving rise to the cause of action.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs demand judgment as follows:

a.     Declaring this action to be a class action pursuant to Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure on behalf of the Class defined herein;

b.     Awarding Plaintiffs and the other members of the Class damages in an amount which may be proven at trial, together with interest thereon;

CLASS ACTION COMPLAINT - 30

1      c.      Awarding Plaintiffs and the other members of the Class pre-judgement and post-

2  judgement interest, as well as their reasonable attorneys' and experts' witness fees and other

3  costs; and

4      d.      Awarding such other relief as this Court deems just and proper.

5  **<u>JURY TRIAL DEMANDED</u>**

6

      Plaintiffs hereby demand a trial by jury.

7  DATED this 28th day of June, 2022.

8
                          Respectfully submitted,

9
                          **TOUSLEY BRAIN STEPHENS PLLC**

10
                          */s/ Kim D. Stephens*

11
                          Kim D. Stephens, P.S., WSBA #11984
                          */s/ Cecily C. Jordan*

12
                          Cecily C. Jordan, WSBA # 50061
                          1200 Fifth Avenue, Suite 1700

13
                          Seattle, Washington 98101
                          Tel: 206-682-5600

14
                          Fax: 206-682-2992
                          kstephens@tousley.com

15
                          rsolomon@tousley.com

16
                          *Local Counsel for the CWA Local 1180 Members'*
                          *Annuity Fund and CWA Local 1180*

17
                          *Administrative Benefits Fund*

18
                          **BARRACK, RODOS & BACINE**
                          STEPHEN R. BASSER

19
                          SAMUEL M. WARD
                          STEPHEN R. BASSER

20
                          600 West Broadway, Suite 900
                          San Diego, CA  92101

21
                          Email: sbasser@barrack.com
                                    sward@barrack.com

22
                          Telephone:  (619) 230-0800
                          Facsimile:  (619) 230-1874

23
                             - and -

CLASS ACTION COMPLAINT - 31

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

**BARRACK, RODOS & BACINE**
JEFFREY A. BARRACK*
3300 Two Commerce Square
2001 Market Street
Philadelphia, PA 19103
E-mail:  jbarrack@barrack.com
Telephone:  (215) 963-0600
Facsimile:   (215) 963-0838

*Counsel for the CWA Local 1180 Members'
Annuity Fund and CWA Local 1180
Administrative Benefits Fund, and Proposed Lead
Counsel for the Class*

*Pro Hac Vice* application to be filed

CLASS ACTION COMPLAINT - 32

# Attachment A

## CERTIFICATION PURSUANT TO
## THE FEDERAL SECURITIES LAWS

I, Damien Arnold, on behalf of the CWA Local 1180 Members' Annuity Fund and CWA Local 1180 Administrative Benefits Fund (collectively the "Local 1180 Funds"), hereby certify that:

1.     I am authorized to make this certification as the Administrator of the Local 1180 Funds.

2.     The Local 1180 Funds have authorized the filing on their behalf of a complaint for violation of the federal securities laws, a draft of which I have reviewed.

3.     The Local 1180 Funds did not purchase the securities that are the subject of this action at the direction of their counsel, nor in order to participate in any private action under the United States securities laws.

4.     The Local 1180 Funds are willing to serve as a lead plaintiff and representative party on behalf of the class in this action, including providing testimony at deposition and trial, if necessary. The Local 1180 Funds fully understand the duties and responsibilities of the lead plaintiff under the Private Securities Litigation Reform Act, including the selection and retention of counsel and overseeing the prosecution of the action on behalf of the class.

5.     The Local 1180 Funds' transactions in Amazon.com, Inc. securities that are the subject of this action are set forth on Exhibit A attached hereto.

6.     During the three years prior to the date of this certification, the Local 1180 Funds have not sought to serve or been appointed to serve as a representative party on behalf of a class asserting federal securities law claims.

7.     The Local 1180 Funds will not accept any payment for serving as a representative party on behalf of a class beyond its *pro rata* share of any recovery, except such reasonable costs and expenses (including lost wages) relating to the representation of the class as ordered or approved by the court.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 28ᵗʰ day of June 2022.

Damien Arnold

CWA 1180 Funds
Amazon.com, Inc.
Class Period: 02/01/2019 through 04/28/2022

| | PURCHASES | | | | SALES | | |
|---|---|---|---|---|---|---|---|
| **DATE** | **SHARES** | **PRICE/SH** | | | **DATE** | **SHARES** | **PRICE/SH** |

**CWA Local 1180 Members' Annuity Fund**

| | PURCHASES | | | | SALES | | |
|---|---|---|---|---|---|---|---|
| Beg. Bal. | 810 | | | | | | |
| 4/14/2020 | 20. | 2,274.84 | | | 10/2/2019 | 20. | 1,711.155 |
| | | | | | 10/3/2019 | 20. | 1,719.39 |
| | | | | | 9/3/2021 | 15. | 3,450.92 |
| | | | | | 1/31/2022 | 10. | 2,966.97 |
| | | | | | 2/1/2022 | 100. | 2,991.4483 |
| | | | | | 2/15/2022 | 10. | 3,121.34 |

**CWA Local 1180 Administrative Benefits Fund**

| | PURCHASES | | | | SALES | | |
|---|---|---|---|---|---|---|---|
| Beg. Bal. | 170. | | | | | | |
| 9/12/2019 | 5. | 1,848.43 | | | 3/12/2020 | 5. | 1,713.56 |
| 11/5/2021 | 3. | 3,556.55 | | | 2/5/2021 | 10. | 3,324.70 |
| 11/8/2021 | 15. | 3,518.336 | | | 2/18/2021 | 15. | 3,288.17 |
| 11/15/2021 | 2. | 3,534.37 | | | 3/5/2021 | 10. | 2,981.045 |
| 12/3/2021 | 10. | 3,381.719 | | | 3/24/2021 | 13. | 3,141.3969 |
| 12/21/2021 | 2. | 3,354.895 | | | 4/9/2021 | 8. | 3,353.07 |
| 12/22/2021 | 3. | 3,395.91 | | | 5/10/2021 | 14. | 3,216.84 |
| 12/30/2021 | 3. | 3,394.51 | | | 5/26/2021 | 6. | 3,293.17 |
| 12/31/2021 | 6. | 3,360.57 | | | 6/16/2021 | 13. | 3,402.0431 |
| 1/3/2022 | 7. | 3,402.8271 | | | 7/7/2021 | 5. | 3,704.58 |
| 2/3/2022 | 7. | 2,814.0229 | | | 7/28/2021 | 8. | 3,621.32 |
| 2/8/2022 | 5. | 3,179.71 | | | 7/29/2021 | 4. | 3,611.02 |
| 2/16/2022 | 10. | 3,141.468 | | | 9/15/2021 | 2. | 3,441.24 |
| 3/1/2022 | 2. | 3,021.89 | | | | | |
| 3/11/2022 | 3. | 2,959.14 | | | | | |
| 3/23/2022 | 3. | 3,314.11 | | | | | |
| 3/29/2022 | 2. | 3,384.51 | | | | | |